# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF LOUISIANA
# NEW ORLEANS, LOUISIANA

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| VIRGIN OIL COMPANY, INC. | § | Case No. 09-11899 |
| | § | |
| Debtor. | § | Section "A" |

## MOTION FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE PURSUANT TO § 1104 OF THE BANKRUPTCY CODE

CIT Capital USA Inc. ("CIT") moves for the appointment of a Chapter 11 trustee and for cause would show as follows:

## INTRODUCTION

1. Management of a debtor-in-possession owes fiduciary duties to all creditors and must act in a manner consistent with those duties. But the Debtor's current management is not capable of exercising its independent fiduciary duty to creditors because management is ensnared in a web of conflicts and divided loyalties. Those conflicts have already led the Debtor's management to take actions contrary to the best interests of this estate, and may have irreparably harmed the Debtor. If allowed to remain, the Debtor's management will continue to operate the Debtor for the benefit of management and other parties who are not creditors of this estate, while the prospects for creditor recovery diminishes more every day.

2. The only hope of salvaging any meaningful recovery for creditors is to remove management, and specifically, the Debtor's president Robert Fulton Smith, Jr., from any continued role in this Debtor's operations, and replacing Mr. Smith with a chapter 11 trustee. A Chapter 11 trustee will bring credibility and an independent perspective to the Debtor's operations, and will enable the Debtor, for the first time, to operate for the benefit of its stakeholders, rather than for the benefit of Mr. Smith and other unrelated non-Debtor entities.

Motion for Appointment of a Chapter 11 Trustee – Page 1
024205.0105\537701.06

Further, a chapter 11 trustee will be instrumental in untangling the web of insider transactions that Mr. Smith has created with a level of scrutiny that Mr. Smith simply could never provide.

3. As set forth below, and as the evidence will demonstrate, overwhelming cause exists for appointment of a chapter 11 trustee.

## FACTUAL BACKGROUND

**A. Procedural Background.**

4. On June 25, 2009 (the "Petition Date"), an involuntary petition for relief was filed against the Debtor. On August 20, 2009, the Court entered an order for relief against the Debtor under Chapter 7 of the Bankruptcy Code, and on August 26, 2009, the Court entered an order converting the case to Chapter 11.

5. Since the Petition Date, the Debtor has continued in possession of its property and has operated and managed its business, as a debtor-in-possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An official committee of unsecured creditors (the "Committee") has been appointed in this case and is represented by counsel.

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**B. The Debtor's Business and Debt Structure.**

7. The Debtor owns, and to a limited extent operates, onshore and offshore oil and gas properties. While the Debtor's only revenue source is currently a property operated by a third party, the Debtor's remaining properties have historically either been operated by the Debtor, or allegedly operated by the Debtor's wholly owned subsidiary, Virgin Offshore U.S.A. LLC ("Offshore").

8. While the Debtor alleges that Offshore operates certain of its properties, Offshore has no employees with which to conduct any operations. Further, Mr. Smith, also the president

of Offshore, contends under oath that Offshore has no assets. But evidence will demonstrate that in addition to being utilized as a shell "operating" entity, having no operations, Offshore is an entity Mr. Smith has used to market and allegedly sell interests in oil and gas properties thatwere not Offshore's to sell. Given Offshore's relationship to the Debtor, Mr. Smith's actions with respect to Offshore directly impact the Debtor's operations.

9. CIT is by far the largest creditor in the case, with a secured claim as of the Petition Date of approximately $36 million.[1] The Debtor's recently filed schedules indicate that the Debtor does not believe it has any equity in its prepetition collateral. Specifically, the Debtor asserts that the Prepetition Collateral is worth just under $29 million, as compared to more than $41 million in liens asserted against those properties. Accordingly, based upon the Debtor's own schedules, the Debtor has no equity in its Prepetition Collateral securing CIT's debt.

**C.** **Debtor's Management is Hopelessly Conflicted.**

10. From the beginning of this case, and even pre-dating its filing, CIT has sought information regarding the Debtor's operations and its relationship with Offshore. Mr. Smith has publicly maintained that Offshore was the operator for most of the Debtor's properties, and that Offshore's business was separate and distinct from the Debtor's business. It was not until the Debtor was finally forced into an involuntary bankruptcy proceeding by its trade creditors that it

---

[1] As of the Petition Date, the Debtor was indebted to CIT, as administrative agent on behalf of CIT and Whitney National Bank ("Whitney") in the amount of approximately $36 million, pursuant to (i) an asset based revolving loan facility (the "First Lien Credit Facility") secured by a first lien on all of the Debtor's right, title, and interest in the Debtor's oil and gas leases (the "Mortgaged Properties") and all personal property directly related thereto, including any production and proceeds of production, and (ii) a term loan facility (the "Second Lien Credit Facility)" and together with the First Lien Credit Facility, the "Credit Facility") secured by a second lien on the Debtor's interest in the Mortgaged Properties and all personal property directly related thereto, including any production and proceeds of production. All obligations of the Debtor to CIT, including those debts under the Credit Facility, are secured by a valid and perfected security interest in substantially all of the assets of the Debtor, including but not limited to the Mortgaged Properties, and the proceeds and products thereof, whether tangible or intangible (the "CIT Collateral").

Motion for Appointment of a Chapter 11 Trustee – Page 3
024205.0105\537701.06

became clear that Offshore is not really an operating entity at all, but is instead a shell entity utilized by Mr. Smith for a variety of purposes, all of which damaged this estate and its creditors.

11. One of the ways in which Mr. Smith used Offshore was to market and sell alleged oil and gas interests. While Mr. Smith refers to the parties to whom he sold these interests to as "investors," it does not appear that such individuals and entities are investors in the traditional sense. Rather, those individuals and entities were allegedly sold what were described as "working interests" in oil and gas properties. But regardless of how Mr. Smith described the interests, those interests did not exist and could not have been sold by Offshore. Rather, the properties are owned by the Debtor, and mortgaged to CIT. Of course, there is no public record of any such transfers, as neither the purported transferees, nor Offshore recorded any of the alleged transfers.

12. The conflict is evident. Mr. Smith, acting on behalf of Offshore apparently has attempted to sell interests in the Debtor's properties without proper authority, and he asserts that he is acting as "nominee" for the various third parties with respect to the purported transfers. But these very properties are assets of the Debtor's estate and are mortgaged to CIT. Mr. Smith simply cannot act on behalf of himself, the Debtor, and Offshore.

13. Mr. Smith simply cannot function as a fiduciary to the Debtor's estate with respect to transactions as to which he himself was on all sides.[2] If claims are made against Offshore, the Debtor or Mr. Smith himself, to whom will his allegiances lie? If the Debtor's assets are to be sold, could Mr. Smith market the assets without also seeking to usurp potential sales for his

---

[2] In addition to Mr. Smith's conflicts related to his various roles at Offshore and the Debtor, Mr. Smith also appears to have received substantial insider transfers over the last year through another entity he controls. Of course, Mr. Smith could never independently investigate these insider transfers to a company he owns and controls.

investors and himself? Mr. Smith himself has stated, and his actions demonstrate that his loyalty is to the "investors" rather than the creditors of this estate.

**D.     Mismanagement of the Debtor's Assets.**

14.     Mr. Smith's divided loyalties have caused direct and severe damage to this estate -- a result which can only be described as gross mismanagement. For example, the Debtor has failed to send joint interest billings to the alleged "investors" or joint interest owners for the entire calendar year of 2009. That failure has resulted in almost $2 million in accounts receivable for "joint interest owners" as set forth in the Debtor's schedules. Regardless of Mr. Smith's explanation for this blatant mismanagement, the reality is that Mr. Smith has allowed the Debtor to shoulder the costs of operations, rather than send bills to the various third parties (including another company owned by himself). Those actions demonstrate that Mr. Smith is representing the interests of himself and various third parties to the detriment of the Debtor's estate.

15.     Mr. Smith has also demonstrated a substantial level of gross mismanagement separate and apart from his conflicts. First, the Debtor has repeatedly failed to operate its business in a prudent manner. That mismanagement has led to the incurrence of substantial trade debt, with no real prospect of repayment. At the same time, and as detailed above, the Debtor failed to send bills for more than nine months, thereby further exacerbating any financial difficulty it was experiencing. Further, despite having only one to three wells operating at any one time, Mr. Smith has repeatedly failed to track lease expirations and capital needs, which has resulted in the loss of at least one of collateral property in the last year, and may threaten yet another property.

Motion for Appointment of a Chapter 11 Trustee – Page 5
024205.0105\537701.06

## ARGUMENT & AUTHORITIES

**A.     A Chapter 11 Trustee Should Be Appointed.**

16.     Due to the myriad of conflicts caused by Mr. Smith's actions, and the pattern of resulting gross mismanagement by Mr. Smith, the Debtor's management simply cannot fulfill its fiduciary duties to the creditors (both secured and unsecured) in this case. Accordingly, CIT requests that a chapter 11 trustee be appointed.

17.     Specifically, CIT requests that the Court appoint a chapter 11 trustee to manage the business and affairs of the Debtor pursuant to section 1104(a) of the Bankruptcy Code. Section 1104(a) of the Bankruptcy Code provides, in pertinent part, as follows:

> At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
>
> (1)     for cause, including fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause . . . or
>
> (2)     if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate . . . or
>
> (3)     if grounds exist to convert or dismiss the case under Section 1112, but the court determines that the appointment of a trustee or examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1104(a). The facts here compel appointment of a trustee under either the objective test set forth in 11 U.S.C. § 1104(a)(1), or the subjective "best interests" test set forth in 11 U.S.C. §§ 1104(a)(2).

Motion for Appointment of a Chapter 11 Trustee – Page 6
024205.0105\537701.06

B.   **Cause Exists for the Appointment of a Chapter 11 Trustee Under Section 1104(A)(1) of the Bankruptcy Code.**

18.   Section 1104(a)(1) of the Bankruptcy Code provides for the appointment of a trustee for "cause." Under section 1104(a)(1) of the Bankruptcy Code, the moving party can establish "cause," for example, by showing "fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor by current management . . . ." 11 U.S.C. § 1104(a)(1). But "[t]he examples of cause enumerated in § 1104(a)(1) are not exhaustive; the Court may find that cause exists for a reason not specifically set forth in the statute." *In re Cardinal Indus., Inc.*, 109 B.R. 755, 765 (Bankr. S.D. Ohio 1990).

19.   Once cause is demonstrated, the Bankruptcy Code mandates the appointment of an impartial chapter 11 trustee. *See Tradex Corp. v. Morse*, 339 B.R. 823, 826 (D. Mass. 2006) (stating that a court is required to appoint a trustee once the movant meets its burden); *In re Oklahoma Ref. Co.*, 838 F.2d at 1136 ("[o]nce the court has found that cause exists under § 1104, it has no discretion but must appoint a trustee"); *In re Bellevue Place Assoc.*, 171 B.R. 615, 622 (Bankr. N.D. Ill. 1994) *aff'd* 1994 U.S. Dist. LEXIS 17409 (N.D. Ill. Dec. 6, 1994)("[a] bankruptcy court is required to order the appointment of a trustee where 'cause' exists"); *In re Bonded Mailings, Inc.*, 20 B.R. 781, 786 (Bankr. E.D.N.Y. 1982) ("where such cause as is enumerated has been shown, the courts have no discretion but must appoint a trustee."); *In re McCordi Corp.*, 6 B.R. 172, 176-78 (Bankr. S.D.N.Y. 1980).

   1.   **Pervasive conflicts are sufficient cause for appointment of trustee.**

20.   The filing of a chapter 11 bankruptcy petition imposes upon a debtor-in-possession a fiduciary duty to all of its creditors to administer the assets and business of the estate in the interest of those creditors. *In re Bellevue Place Assocs.*, 171 B.R. at 623-24 Such fiduciary obligations include a duty of loyalty which precludes officers and directors from

engaging in any self-dealing. *Id*. at 624. Conflicting personal interests of officers and directors that interfere with the exercise of their fiduciary duties to all creditors constitute cause to appoint a trustee pursuant to section 1 104(a)(1) of the Bankruptcy Code. *Id*.

21. The seminal Fifth Circuit case concerning appointment of a chapter 11 trustee in the face of pervasive conflicts of interest is *In re Cajun Elec. Power Coop., Inc.* ("*Cajun Electric*"), 74 F.3d 599, 600 (5th Cir. 1996) (adopting on rehearing dissent in *In re Cajun Elec. Power Coop., Inc. v. Central Louisiana Elec. Co., Inc*. (*In re Cajun Elec. Power Coop., Inc*.), 69 F.3d 746, 751 (5th Cir. 1995)) cert. denied, 117 S. Ct. 51 (1996). There, the Fifth Circuit ultimately affirmed the appointment of a chapter 11 trustee of a debtor who was an electric cooperative. As a cooperative, the members (and primary users) of the debtor owned and controlled the debtor's day to day operations. The tension between the members and the creditors gave rise to serious questions of conflict. The Court there determined that appointment of a trustee is necessary when actual conflicts arise between a coop debtor's board (made up of coop members) and the coop's creditors. When those conflicts result in the debtor "fail[ing] to collect monies owed . . . " or when members consider strategies that "scavenge the assets of the debtor . . . " cause exists to appoint a trustee. *Cajun Electric,* 69 F.3d at 751 [emphasis added]. A trustee must be appointed in such a situation because "it is impossible for the debtor-in-possession to act as a fiduciary for the estate at the same time it acts as a fiduciary for its members and customers." *In re Cajun Elec. Power Coop., Inc*., 191 B.R. 659, 662 (Bankr. M.D. La. 1995), *vacated by* 69 F.3d 746 (5th Cir. 1995), *aff'd on reh'g*, 74 F.3d 599 (5th Cir. 1996); *see also, In re Patman Drilling International, Inc*., 2008 Bankr. LEXIS 715 (Bankr.N.D.Tx.2008)(court appointed chapter 11 trustee where management had conflicting interests with respect to insider transfers, and operation of an affiliate to the detriment of the

estate, holding that management is "incapable of independently investigating and pursing potential causes of action arising out of inter-company transfers . . . .")

22. The circumstances here indisputably demonstrate sufficient cause for the appointment of a trustee on the basis of a clear conflict caused by Mr. Smith. The conflicting interests and loyalties of Mr. Smith, with respect to the Debtor's relationships with Offshore, and the various "investors" or claimants against Offshore, makes it impossible for Mr. Smith to effectively and independently oversee the debtor-in-possession. As in *Cajun Electric*, these conflicts have already resulted in Mr. Smith failing to collect monies due to the Debtor (almost $2 million in unbilled JIBs), and has resulted in Mr. Smith's alleged sale of the Debtor's assets without proper authority, packaged as interests owned by Offshore. Mr. Smith simply cannot be allowed to continue to manage and operate this Debtor, as he could never independently represent the estates interest in investigating and prosecuting claims related to insider transactions that he orchestrated.

### 2. Gross mismanagement gives rise to cause for appointment of trustee.

23. Cause for appointment of a chapter 11 trustee can also be established when there has been gross mismanagement of the debtor. *See, e.g., In re Euro-Am. Lodging Corp*., 365 B.R. 421, 426 (Bankr. S.D.N.Y. 2007); *In re Ionosphere Clubs, Inc*., 113 B.R. 164, 168-69 (Bankr. S.D.N.Y. 1990) (noting gross mismanagement leading to inaccurate projections and the resultant loss to creditors); *In re Cardinal Indus., Inc*., 109 B.R. at 767 (accepting creditors' committee allegations of inaccurate financial forecasts, failure to stem cash losses since the petition date, among other concerns).

24. Here, there are numerous examples of Mr. Smith's gross mismanagement of the Debtor, including failing to send joint interest billings for nine months, failing to adequately

manage the Debtor's properties, which resulted in the loss of at least one lease, and incurring substantial trade debt when there was little likelihood of repayment. All the while, Mr. Smith continued to pay himself substantial sums (including unexplained transfers to one of his companies), and only ended up in bankruptcy as a result of an involuntary petition (to which the Debtor had no defense).

        **3.     Creditors have no confidence in the Debtor.**

25. This case began with an involuntary petition filed against the Debtor, which signaled that creditors had no confidence in Mr. Smith and the Debtor. CIT, by far the largest creditor of this Debtor, has no confidence in Mr. Smith and his ability to manage this Debtor. CIT expects that the Committee will join this motion, as the members of the Committee have, to date, expressed an equal level of a lack of confidence in Mr. Smith. As a result, the Debtor will likely be faced with every substantial creditor effectively providing a vote of no confidence, and requesting that Mr. Smith be removed from power.

26. Given Mr. Smith's failures, mismanagement, and blatant conflicts of interest, creditors here have no confidence in Mr. Smith and this Debtor to continue operations. That alone serves as an independent basis for appointment of a trustee. *In re Colorado- Ute Elec. Ass'n., Inc.*, 120 B.R. 164, 174 (Bankr. D. Colo. 1990). Cause can also be shown where the movant can establish gross mismanagement. *See, e.g., In re Euro-Am. Lodging Corp.*, 365 B.R. 421, 426 (Bankr. S.D.N.Y. 2007) (stating, as a reason to appoint a trustee, "the Court concludes that the creditors sincerely and justifiably lack confidence in management")

**C.    The Appointment of a Chapter 11 Trustee is in the Best Interests of Creditors Pursuant to Section 1104(A)(2) of the Bankruptcy Code.**

27. Section 1104(a)(2) of the Bankruptcy Code sets forth a "best interests of creditors" test that emphasizes a court's broad equity powers to engage in a cost-benefit analysis

in making the decision whether the appointment of a trustee is appropriate. The factors to be considered under section 1104(a)(2) of the Bankruptcy Code are:

    (1)    the trustworthiness of the debtor;

    (2)    the debtor-in-possession's past and present performance and prospects for the debtor's rehabilitation;

    (3)    the confidence or lack thereof of the business community and of creditors in present management; and

    (4)    the benefits derived by the appointment of a trustee, balanced against the cost of appointment.

*In re Euro-Am. Lodging Corp.*, 365 B.R. at 427; *Tradex Corp. v. Morse*, 339 B.R. at 829. *See also Cajun Elec. Power Coop.*, 191 B.R. at 661-62; *In re Colorado-Ute Elect. Assoc., Inc.*, 120 B.R. at 176.

28. Numerous courts have appointed a trustee relying solely upon the "best interests" test. *See, e.g., In re Microwave Prods. of Am., Inc.*, 102 B.R. 666, 676-77 (Bankr. W.D. Tenn. 1989); *In re L.S. Good & Co.*, 8 B.R. 312, 315 (Bankr. N.D. W.Va. 1980). Indeed, appointment of a trustee may be warranted even where no "cause" exists. *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989); *Bellevue Place Assocs.*, 171 B.R. at 623. Instead of focusing on cause, courts under section 1104(a)(2) of the Bankruptcy Code will act on "the practical realities and necessities" of a case. *In re Euro-Am. Lodging Corp.*, 365 B.R. at 427; *In re Ionosphere Clubs, Inc.*, 113 B.R. at 168.

29. Many of the cases appointing a trustee in the "best interests" of creditors considered the same factors as those considered for a finding of "cause" to appoint a trustee. *See, e.g., In re Euro-Am. Lodging Corp.*, 365 B.R. at 428 ("[w]here [a debtor's managers] suffer from material conflicts of interest, an independent trustee should be appointed under

§ 1104(a)(2)"); *In re Sharon Steel Corp.*, 871 F.2d at 1120-21 (appointment of trustee under section 1104(a) of the Bankruptcy Code for cause *and* in the best interests of the creditors and the estate); *In re Marvel Entm 't Group, Inc*., 140 F.3d at 474 (appointment of trustee under section 1104(a) of the Bankruptcy Code for cause and in the best interests of the creditors and the estate). However, under this less stringent standard, *the moving party need not show wrongful behavior on the part of management*, as long as a meaningful benefit from the appointment of a trustee is shown and the benefit outweighs the burdens and expenses. *See, e.g., Cardinal Indus*., 109 B.R. at 766; *In re Microwave Prods., Inc*., 102 B.R. at 675.

30. Here, the appointment of a trustee would be in the best interests of the Debtor's estate in this case at this time. An independent trustee could quickly maximize the value of the Debtor's assets for creditors, and is therefore in the best interests of creditors. The interests of creditors would be served by having an independent trustee evaluate whether continued operation of the Debtor makes sense, or whether instead the Debtor's assets should be sold.

## CONCLUSION

31. In light of the substantial conflicts, gross mismanagement and loss of creditor confidence, this Court should appoint a trustee to administer the assets of the Debtor. The Court has the authority to do so under sections 1104(a)(1) and 1104(a)(2). The appointment of an impartial trustee will benefit the Debtor's estate and creditors because a trustee will have the sole motivation of maximizing the value of the Debtor's estate for creditors. Moreover, the trustee would be an independent party, free from any conflicts of interest, and will likely vigorously pursue all actions that are in the Debtor's best interests. Such impartiality is desperately needed in this case.

Dated: October 20, 2009.                    Respectfully submitted,

By:   /s/ *Brent R. McIlwain*

Robert W. Jones (Texas State Bar No. 10951200)
Brent R. McIlwain (Texas State Bar No. 24013140
Kristen N. Beall (Texas State Bar No. 24059049)
PATTON BOGGS, LLP
2001 Ross Avenue, Suite 3000
Dallas, Texas 75201-8001
Direct: 214-758-6602
Fax: 214-758-1550

and

David F. Waguespack (LA State Bar No. 21121)
CARVER, DARDEN, KORETZKY, TESSIER,
FINN, BLOSSMAN & AREAUX, LLC
1100 Poydras Street, Suite 3100
New Orleans, Louisiana 70163
Direct: (504) 585-3814
Fax: (504) 585-3801

***Attorneys for CIT Capital USA Inc.***

**CERTIFICATE OF SERVICE**

This is to certify that service of this document has been made on the 20th day of October, 2009 by electronic service through the Court's transmission facilities upon those persons listed as recipients of electronic notice on the Notice of Electronic Filing document generated by the Court's System at the time of the filing of this document.

Jeffrey M. Burmaster on behalf of Creditor Spirit Drilling Fluids, Ltd.; Spirit Completion Fluids, Ltd.
jburmaster@kingkrebs.com

Leo D. Congeni on behalf of Debtor Virgin Oil Company, Inc.
LeoCongeni@bellsouth.net

Michael A. Crawford on behalf of Creditor Dynamic Energy Services, LLC
mike.crawford@taylorporter.com

James P. Doré on behalf of Creditor Fidelity Working Capital
jim.dore@keanmiller.com, shannon.duroncelet@keanmiller.com

Carl Doré on behalf of Creditor Weatherford International, Inc.
carldore@doreassociates.com, kevin@doreassociates.com

J. David Forsyth on behalf of Creditor Helis Oil & Gas Company, LLC
jdf@sessions-law.com, mob@sessions-law.com

John Marston Fowler on behalf of Creditor Action Oilfield Services, Inc.
marston@jmfowlerlaw.com, jmire@eatel.net

S. Ault Hootsell on behalf of Creditor Laborde Marine, LLC
hootsela@phelps.com, crombiet@phelps.com

George B. Jurgens on behalf of Creditor Spirit Completion Fluids, Ltd.
gjurgens@kingkrebs.com, gchristian@kingkrebs.com

Benjamin Kadden on behalf of Counter-Defendant Baker Hughes Oilfield Operations, Inc.
bkadden@lawla.com, sgale@lawla.com

Troy P. Majoue on behalf of Creditor RLI Insurance Company
tmajoue@qsclpc.com

Mark Mintz on behalf of Creditor Cal Dive International, Inc.

mmintz@joneswalker.com

Stewart F. Peck on behalf of Creditor Wood Group Pressure Control, LP
speck@lawla.com

Emile L. Turner on behalf of Counter-Claimant Virgin Oil Company, Inc.
eltjr01@bellsouth.net

Office of the U.S. Trustee
USTPRegion05.NR.ECF@usdoj.gov

Arthur A. Vingiello on behalf of Creditor Century Exploration New Orleans, Inc.
avingiello@steffeslaw.com, jslattery@schullyroberts.com, edreuil@schullyroberts.com

David F. Waguespack on behalf of Creditor Whitney National Bank
waguespack@carverdarden.com, docket@carverdarden.com, plaisance@carverdarden.com

E. Kathleen Shahan on behalf of the U.S. Department of Justice
Kathie.shahan@usdoj.gov, Pamela.d.huff@usdoj.gov

Omer F. Kuebel, III and C. Davin Boldissar on behalf of B.A. Adams Oil & Gas Investments, LLC and Lagniappe Productions of Louisiana, LLC
nobankecf@lockeliddell.com


**I HEREBY FURTHER CERTIFY** that the above and foregoing document has been served via U.S. mail, postage prepaid and properly addressed, on the 20th day of October, 2009, on the following persons:

**Office of the U.S. Trustee**
Eastern District of Louisiana
Texaco Center
400 Poydras Street, Suite 2110
New Orleans, LA 70130-3238

**U.S. Department of Justice**
E. Kathleen Shahan
1100 L Street, NW - Room 10026
Washington, D.C. 20005

**U.S. Department of Justice**
Pamela D. Huff
1100 L Street, NW - Room 10000
Washington, D.C. 20005

**Laborde Marine, LLC**
c/o S. Ault Hootsell, III
Phelps Dunbar, LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130

**Cal Dive International, Inc.**
c/o Elizabeth J. Futrell
Jones, Walker, Waechter, Poitevant, Carrere & Denegre, LLP
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170

**Cal Dive International, Inc.**
c/o Mark A. Mintz
Jones, Walker, Waechter, Poitevant, Carrere & Denegre, LLP
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170

**El Paso Corporation**
c/o Michael J. McGinnis
1001 Louisiana, Suite E2751D
Houston, TX 77002

**Action Oilfield Services, Inc.**
c/o Pegram J. Mire, Jr.
Dugas, LeBlanc & Mire, LLC
510 South Burnside Avenue, Suite A
Gonzales, LA 70737

**Action Oilfield Services, Inc.**
c/o J. Marston Fowler
Law Office of J. Marston Fowler
212 Laurel Street
Baton Rouge, LA 70801

**Fidelity Working Capital, LLC**
**formerly known as BrooksGreenblatt, LLC**
c/o Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, LLP
P.O. Box 3513
18th Floor, One American Place
Baton Rouge, LA 70821

**CapRock Communications, Inc.**
c/o Alan B. Aronowitz
4400 S. Sam Houston Parkway E.
Houston, TX 77048

Motion for Appointment of a Chapter 11 Trustee – Page 16
024205.0105\537701.06

**Weatherford International, Inc.**
c/o Carl Doré, Jr.
Doré & Associates, Attorneys, PC
17171 Park Row, Suite 350
Houston, TX 77084

**RLI Insurance Company**
c/o  Martin P. Averill
     Timothy A. York
     Troy Majoue
Quilling, Selander, Cummiskey & Lownds, PC
2001 Bryan Street, Suite 1800
Dallas, TX 75201

**Century Exploration New Orleans, Inc.**
c/o  Gerald F. Slattery, Jr. and
     Emile J. Dreuil, III
Schully, Roberts, Slattery & Marino
1100 Poydras Street, Suite 1800
New Orleans, LA 70163

**Century Exploration New Orleans, Inc.**
c/o Arthur A. Vingiello
Steffes, Vingiello & McKenzie, LLC
13702 Coursey Boulevard, Building 3
Baton Rouge, LA 70817

**Spirit Drilling Fluids, Ltd. and**
**Spirit Complete Fluids, Ltd.**
c/o George B. Jurgens, III
King, Krebs & Jurgens, PLLC
201 St. Charles Avenue, 45th Floor
New Orleans, LA 70170

**Spirit Drilling Fluids, Ltd. and**
**Spirit Complete Fluids, Ltd.**
c/o Jeffrey M. Burmaster
King, Krebs & Jurgens, PLLC
201 St. Charles Avenue, 45th Floor
New Orleans, LA 70170

**Whitney National Bank**
c/o David F. Waguespack
Carver, Darden, Koretzky, Tessier, Finn, Blossman & Areaux, LLC
1100 Poydras Street, Suite 3100
New Orleans, LA 70163

**Dynamic Energy Services, LLC**
c/o Michael A. Crawford
Taylor, Porter, Brooks & Phillips, LLP
P.O. Box 2471
Baton Rouge, LA 70821-2471

**Helis Oil & Gas Company, LLC**
c/o J. David Forsyth
Sessions, Fishman, Nathan & Israel, LLP
201 St. Charles Avenue, Suite 3815
New Orleans, LA 70170

**B.A. Adams Oil & Gas Investments, LLC**
**Lagniappe Productions of Louisiana, LLC**
c/o Omer F. Kuebel, III
    C. Davin Boldissar
Locke Liddell & Sapp LLP
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036

    */s/ Kristen N. Beall*
    Kristen N. Beall