# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 09-11899 |
| | * | |
| VIRGIN OIL COMPANY, INC. | * | CHAPTER 11 |
| | * | |
| DEBTOR | * | SECTION "A" |

## CHAPTER 11 PLAN OF REORGANIZATION
## FOR VIRGIN OIL COMPANY, INC.
## <u>AS OF JULY 30, 2010</u>

The Law Office of Emile L. Turner, Jr., LLC
Emile L. Turner, Jr.
Leo D. Congeni, *of counsel*
424 Gravier Street
New Orleans, LA 70130
Counsel for Debtor and Debtor in Possession

Virgin Oil Company, Inc., as debtor and debtor-in-possession ("Debtor"), proposes the following Chapter 11 Plan of Reorganization with respect to its Chapter 11 case.

# ARTICLE 1

## <u>DEFINITIONS AND CONSTRUCTION OF TERMS</u>

Unless the context requires otherwise, each term stated in either the singular or the plural will include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender will include the masculine, the feminine and the neuter. Unless the context requires otherwise, the following words and phrases will have the meanings set forth below when used in the initially-capitalized form in this Plan: An initially capitalized term used herein that is not defined herein shall have the meaning ascribed to such term, if any, in the Bankruptcy Code, unless the context shall otherwise require. The words "in this Plan", "this Plan", "hereto", "hereof," "herein," or "hereunder" and other words of similar import, unless specifically stated otherwise, refer to the entirety of the Plan, and not to a particular Section of the Plan. The words "Article," "Section," "subsection," "clause" or "sentence" refer to particular provisions of the Plan and not to the entirety thereof. The word "including" (and with correlative meaning, the word "include") means including, without limiting or restricting the generality of any description preceding the word "including" or "include," and shall mean "including, but not limited to." The use of the word "any" shall mean "any and all," and the use of the word "all" shall also mean "any and all." The words "shall" and "will" are used interchangeably and have the same meaning. Unless the context requires

otherwise, the following words and phrases shall have the meanings set forth below when used in initially capitalized form in this Plan:

1.1     *"Administrative Expense Claim"* shall mean a Claim for any cost or expense of administration of the Debtor's Chapter 11 Case entitled to priority in accordance with the provisions of Sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, (a) actual and necessary expenses of preserving the Estate and operating the Debtor's business, (b) fees and expenses of Professionals to the extent allowed by a Final Order under Sections 328, 330 and 503 of the Bankruptcy Code, and (c) fees and charges properly assessed against the Debtor in Possession under Section 1930 of title 28 of the United States Code.   It shall not include the cure costs with respect to executory contracts and unexpired leases assumed by the Debtor pursuant to Section 365 of the Bankruptcy Code.

1.2     *"Allowed"* shall mean with respect to any Claim against or Interest in the Debtor, a Claim or Interest (a) proof of which is timely Filed (or by order of the Bankruptcy Court or as otherwise provided herein is not required to be Filed), (b) that is listed by such Debtor in its Schedules as liquidated in amount, non-disputed and non-contingent and for which no proof of claim has been Filed, or (c) expressly allowed pursuant to this Plan; and, in each case with respect to (a) and (b) above, either (i) no objection (or an amendment of the Schedules with respect thereto) to its allowance, amount, or classification has been interposed within the applicable period for filing same fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (ii) such objection (or an amendment of the Schedules with respect thereto), if so interposed, has been determined and fixed by a Final Order (but only to the extent so

determined and fixed and not where fixed and allowed solely for purposes of voting to accept or reject the Plan). Claims that are not Allowed or are disallowed by Final Order or otherwise, including those disallowed under Section 502(d) of the Bankruptcy Code, shall not be Allowed Claims.

 1.3 *"Allowed Amount"* shall mean, with respect to each Claim:

 (a) the dollar amount of an Allowed Claim as determined by a Final Order or as set forth in this Plan;

 (b) in the event that no such determination of the Allowed Amount of a Claim is made pursuant to subsection (a), the dollar amount agreed to by the Claimant and the Debtor or, after the Effective Date, the applicable Reorganized Debtor;

 (c) in the event that no Allowed Amount is determined pursuant to clause (a) or agreed to pursuant to clause (b) above, the amount estimated by a Final Order of the Bankruptcy Court for purposes of distribution pursuant to Section 502 of the Bankruptcy Code; or

 (d) in the event that an Allowed Amount is not determined, agreed to or estimated pursuant to clauses (a), (b) or (c) above, the dollar amount as to which no objection to the allowance, amount or classification thereof has been interposed within the applicable period fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court.

Unless otherwise specified herein or in a Final Order, the Allowed Amount of any Claim shall not include interest accruing on such Claim from and after the Petition Date.

 1.4 *"Allowed Claim"* shall mean a Claim to the extent that it has been Allowed. It shall include the total principal amount of the claim, plus, if applicable, allowed interest, allowed attorney's fees, and any other allowed charges, fees or penalties to the extent allowable under 11 U.S.C. § 506.

 1.5 *"Assets"* shall mean all property of the Debtor as defined in Section 541(a) of the Bankruptcy Code, including but not limited to, all of the Debtor's rights, title and interests in and to all state and federal oil and gas leases, immovable and real property and appurtenances thereto, improvements thereon, cash, deposits, telephone

4

numbers, trade names, trade secrets, trademarks, copyrights, business "know how," goodwill, bank accounts of any and all types of any kind, tangible personal property, furniture, fixtures, equipment, machinery, inventory, general intangibles, general accounts, accounts receivable, intellectual property of all types and kinds, contract rights, licenses and permits, contracts and agreements, privileges of any and all kinds, and any and all other property and rights of the Debtor and its estate, including any and all Avoidance Claims and Causes of Action and any and all defenses, which could be exercised by or on behalf of a Chapter 11 trustee or a debtor in possession.

1.6      *"Avoidance Claim"* shall mean all rights, claims, causes of action, avoiding powers, suits and proceedings of or brought by or which may be asserted by a debtor in possession or a person under chapter 5 of the Bankruptcy Code, including by way of illustration and not limitation, under Sections 510, 541, 544, 547, 548, 549, 550, 553 and 554 of the Bankruptcy Code, together with any claims, rights, remedies or demands that may be asserted by a creditor or representative of creditors under similar applicable state or other laws, and claims in the nature of substantive consolidation, successor liability, veil piercing, or alter-ego.

1.7      *"Bankruptcy Code"* shall mean title 11 of the United States Code, as amended from time to time.

1.8      *"Bankruptcy Court"* shall mean the United States Bankruptcy Court for the Eastern District of Louisiana; having jurisdiction over the Chapter 11 Case, or if such court ceases to exercise jurisdiction over the Chapter 11 Case, such other court having jurisdiction under Title 28 of the United States Code over the Chapter 11 Case.

5

1.9    *"Bankruptcy Rules"* shall mean the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and the Local Rules of the Bankruptcy Court, in each case as amended from time to time during the Chapter 11 Case.

1.10    *"Business Day"* shall mean any day that is not a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.11    *"Cash"* shall mean legal tender of the United States of America, cash equivalents, and readily marketable securities or instruments, including but not limited to, bank deposits, accounts, certified or cashiers checks, timed certificates of deposit issued by any bank, commercial paper, and readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof.

1.12    *"Causes of Action"* shall mean, without limitation, any and all of the Debtor's and the Estate's actions, causes of action, rights, suits, claims, accounts, debts, sums of money, damages, judgments, claims and demands, redemption and repurchase of property, actions, defenses, offsets, powers (including all police, regulatory, and enforcement powers and actions that may be taken), privileges, licenses, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whatsoever, whether known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or tort, in law, equity or otherwise, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable, accruing to and in favor of the Debtor or Debtor in Possession pursuant to the Bankruptcy Code or any applicable statute or law or legal theory.  For avoidance of doubt, Causes of Action include, but are in no way limited to (a) rights of

6

setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law, (b) claims pursuant to Section 362 of the Bankruptcy Code, (c) such claims and defenses as fraud, mistake, duress, and usury, (d) all Avoidance Claims, and (e) all Causes of Action that are assertable by or may be directly or derivatively asserted by the Debtor, its Estate, the Reorganized Debtor, or a representative of the Estate on behalf of Creditors of the Debtor or the Estate.

1.13    *"Century"* shall mean Century Exploration Company.

1.14    *"Chapter 11 Case"* shall mean the chapter 11 case of the Debtor pending before the Bankruptcy Court.

1.15    *"CIT"* shall mean CIT Capital USA, Inc., including CIT as administrative agent for CIT and Whitney National Bank.

1.16    *"Claim"* shall have the meaning as set forth in the Bankruptcy Code.

1.17    *"Claimant"* or *"Creditor"* shall mean the holder of a Claim, together with any predecessor or successor in interest with respect to such Claim.

1.18    *"Class"* shall mean any group of Claims or Interests classified together by this Plan pursuant to Section 1122 of the Bankruptcy Code.

1.19    *"Collateral"* shall mean property of the bankruptcy Estate which secures a Claim of a Creditor of the Estate.

1.20    *"Confirmation Date"* shall mean the date of entry on the docket of the Bankruptcy Court of the Confirmation Order.

1.21    *"Confirmation Hearing"* shall mean the hearing before the Bankruptcy Court regarding confirmation of this Plan and related matters under Section 1128 of the Bankruptcy Code.

1.22    *"Confirmation Order"* shall mean the order signed by the Bankruptcy Court confirming this Plan.

1.23    *"Convenience Claim"* shall mean: (i) a General Unsecured Claim in an amount less than or equal to $1,000.00; or (ii) a General Unsecured Claim in an amount greater than $1,000 whereby the holder of such Claim agrees to reduce such Claim to $1,000 and accept the treatment provided in this Plan to Convenience Claims; *provided further, however,* that any General Unsecured Claim that is a component of a larger Claim shall not be considered or treated as a Convenience Claim in Class 8.

1.24    *"Cramdown"* shall mean the confirmation of this Plan pursuant to 11 U.S.C. § 1129(b) notwithstanding any rejection by an Impaired Class or Classes of holders of Claims or Interests of this Plan.

1.25    *"Debtor"* or shall mean Virgin Oil Company, Inc.

1.26    *"Debtor in Possession or Debtor in Possession"* shall mean the Debtor between the Petition Date and the Effective Date.

1.27    *"Disclosure Statement"* means the Disclosure Statement Filed in connection with the Plan, as modified or amended, approved by the Bankruptcy Court on on _____.

1.28    *"Disputed Claim"* shall mean any Claim that is not an Allowed Claim.  In the event that any portion of a Claim is not an Allowed Claim, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under this Plan until entry of a Final Order fixing and determining the Allowed Amount thereof. Without limiting any of the foregoing, a Claim that is the subject of or part of a pending objection, motion, complaint, counterclaim, setoff, recoupment, Avoidance Claim,

litigation claim or defense, or any other proceeding seeking to disallow, subordinate or estimate such Claim, shall be deemed a Disputed Claim, unless the Plan or the Confirmation Order expressly provides otherwise.

1.29    *"Disputed Claims Reserve"* shall mean the reserve established pursuant to Section 7.8 of the Plan with respect to Disputed Claims.

1.30    *"Distribution Date"* shall mean each date any payment of Cash or distribution of Assets is due to the holders of Allowed Claims or Allowed Interests under this Plan.

1.31    *"D&O Claim"* shall mean claims against Policy No. DOC 2974663 08 issued by Zurich North America Specialties or Policy No. 555-75-82 issued by National Union Fire Ins. Co. of Pittsburg, which policies general provide primary and excess coverage for claims against the directors and officers of the Debtor.

1.32    *"Effective Date"* shall mean the date which is specified as the "Effective Date" in the Notice of Occurrence of Effective Date filed in the record of the Bankruptcy Case pursuant to Article 11.2 of the Plan.

1.33    *"Empire Lease"* shall mean State of Louisiana Lease for Oil and Gas and Other Liquid or Gaseous Minerals No. 18165, Plaquemines Parish, Louisiana.

1.34    *"Empire Lien Claimant"* shall mean any Entity possessing or having a right to assert a lien claim against the Empire Lease arising under the laws of the State of Louisiana.

1.35    *"Empire Operating Agreement"* shall mean that certain Operating Agreement between Virgin Oil Co., Inc. and Virgin Offshore USA, Inc. governing the exploration, development and operation of the Empire Lease.

1.36     *"Entity"* shall mean an individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code) or any political subdivision thereof, or other person.

1.37     *"Equity Interests"* shall mean, collectively, any and all "equity securities" (as defined in Section 101(16) of the Bankruptcy Code) in a Debtor.

1.38     *"Estate"* shall mean the estate of each Debtor, as defined in Section 541 of the Bankruptcy Code.

1.39     *"File"* or *"Filed"* means properly filed with the clerk of court of the Bankruptcy Court in the Chapter 11 Case, as reflected on the official docket of the clerk of court of the Bankruptcy Court for the Chapter 11 Case.

1.40     *"Final Order"* means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction (a) which has become final for purposes of 28 U.S.C. § 158 or such analogous law or rule in the case of an order of a state court and (b)(i) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor (or, if after the Effective Date, by the Reorganized Debtor) or, (ii) in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, (x) such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed with no modifications thereof, or (y) certiorari,

reargument or rehearing has been denied, and (z) the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired with no such further appeal, petition for certiorari or motion for reargument or rehearing having been sought or pending; *provided, however,* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 or other analogous rules of state courts governing procedures in cases before other courts may be filed with respect to such order or judgment shall not render such order or judgment not to be a Final Order.

1.41    "*Impaired*" shall mean, with respect to any Class, that such Class is "impaired" under the Plan within the meaning of Section 1124 of the Bankruptcy Code.

1.42    "*Lien*" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

1.43    "*New Value Contribution*" shall mean the greater of $250,000 or such other amount paid by the person(s) whose bid is chosen at the auction of the Equity Interests in the Debtor.

1.44    "*Petition Date*" shall mean June 25, 2009.

1.45    "*Plan*" shall mean this Chapter 11 Plan of Reorganization in its present form or as it may, from time to time, be modified, amended or supplemented in accordance with the terms hereof, together with any exhibits thereto.

1.46    "*Prime Rate*" shall mean the prime rate, as reported by the Wall Street Journal on the Effective Date.

1.47    "*Priority Tax Claim*" shall mean any Claim entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

11

1.48    *"Professional"* shall mean any professional (a) retained by the Debtor in the Chapter 11 Case or (b) to be compensated pursuant to Sections 327, 328, 330, 503(b), or 1103 of the Bankruptcy Code.   It shall not include the attorneys or other professionals employed by any Creditor.

1.49    *"Property Tax Claims"* shall mean any obligations that the Debtor has to any government unit or any other person or entity for a tax measured or determined based upon the value of property of the Estate and shall include any Claims in or concerning any property which may have been sold, transferred or forfeited as a result of the failure of the Debtor to pay any property tax liability, including ad valorem property taxes, and which may have been sold by any federal, state or local taxing authority at public or private sale and for which the Debtor has a right to redeem, recover or purchase such property from either the taxing authority or any governmental unit or any trust, individual or entity that may have obtained or purchased such property or in any manner obtained any right or interest in such property.

1.50    *"Reorganized Debtor"* shall mean the Debtor after the Effective Date.

1.51    *"RLI"* shall mean RLI Insurance Company.

1.52    *"Schedules"* shall mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as amended or supplemented through the Confirmation Date.

1.53    *"Secured Claim"* shall mean any Allowed Claim of any Claimant secured by a Lien on the Debtor's interest in any Assets as set forth in the Plan or as determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code.

1.54    *"Ship Shoal Operating Agreement"* shall mean that certain Offshore Operating Agreement dated December 12, 2003 between Century, VOS and Virgin Oil Co., Inc. covering portions of Federal Offshore Oil and Gas Leases, Blocks 150, 153 and 154 of Ship Shoal Area.

1.55    *"Unimpaired"* shall mean, with respect to any Class, that such Class is not Impaired.

1.56    *"Unsecured Claim"* means any Claim that is not an Administrative Claim, Priority Claim, Secured Claim, or a Claim otherwise specifically classified in another class in this Plan. To the extent a Secured Creditor has a deficiency claim, such claim shall be treated and vote as an Unsecured Claim unless such creditor makes an election pursuant to 1111(b).

1.57    *"VOS"* shall mean Virgin Offshore USA, Inc.

# ARTICLE 2

## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES

2.1    *Payment of Allowed Administrative Expense Claims.*

2.1.1    *Allowed Administrative Expense Claims.*

Subject to Section 2.1.2 below, each Allowed Administrative Expense Claim shall be paid in full, in Cash, by the Reorganized Debtor on the Effective Date or upon such other terms as may be agreed upon by the holder of such Allowed Administrative Expense Claim and the Reorganized Debtor or otherwise established pursuant to an order of the Bankruptcy Court; *provided, however,* that Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor in Possession shall be paid by the applicable Reorganized Debtor in accordance

13

with the terms and conditions of the particular transactions, the applicable non-bankruptcy law, and any agreements relating thereto or any order of the Bankruptcy Court.

### 2.1.2  *Compensation of Professionals.*

All Professionals, who are seeking compensation or who have been compensated from the estate of the Debtor in Possession during the Chapter 11 Case, or who are seeking compensation from the estate of the Debtor in Possession or from the Reorganized Debtor for services rendered or reimbursement of expenses incurred from the Petition Date through and including the Effective Date, pursuant to Sections 327, 328, 330, 503(b), or 1103 of the Bankruptcy Code, shall (a) File final applications for allowance of compensation for services and reimbursement of expenses incurred from the Petition Date through the Effective Date by no later than the date that is forty-five (45) days after the Effective Date, and (b) if granted such an award by the Bankruptcy Court, be paid in full by the Reorganized Debtor or as otherwise provided in this Plan in such amounts as are Allowed by Final Order of the Bankruptcy Court (i) on the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable, or (ii) when mutually agreed upon by such holder of an Administrative Expense Claim and the Reorganized Debtor.

### 2.1.3  *Bar Date for Filing Administrative Expense Claims.*

Except with respect to any Administrative Expense Claims for which a different deadline is established by this Article 2, any Administrative Expense Claims must be Filed no later than thirty (30) days after the Effective Date or any such Administrative Expense Claim is and shall be deemed to be forever barred and

14

unenforceable against the Debtor, Reorganized Debtor, its respective estate, and its Assets, and the holders of any such Claims are barred from recovering any distributions under the Plan on account thereof.

# ARTICLE 3

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**3.1**    *Class 1.  Priority Tax Claims***.**

3.1.1    *Classification*.

Class 1 consists of all Allowed Priority Tax Claims under Section 507(a)(8), excluding Property Tax Claims.

3.1.2    *Treatment*.

Each holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Allowed Priority Tax Claim, excluding any penalties assessed by such taxing authority, but including applicable interest which at the option of the Reorganized Debtor shall be paid (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Tax Claim and the Reorganized Debtor; or (c) in Cash payments commencing sixty (60) days after the Effective Date, in equal quarterly installments, with an amortization rate calculated on a twenty-five (25) year repayment period, with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section 1129(a)(9)(C) or (D) of the Bankruptcy Code, with the outstanding principal balance, together with all accrued and unpaid interest, being due and payable on August 26, 2014.

3.1.3    *Impairment and Voting.*

Class 1 is Impaired by the Plan.  The holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

### 3.2 *Property Tax Claims*

#### 3.2.1 *Classification*

Class 2 consists of all Allowed Property Tax Claims.

#### 3.2.2 *Treatment*

Each holder of an Allowed Property Tax Claims shall be paid the Allowed Amount of its Allowed Property Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Claim and the Reorganized Debtor; or (c) in full, in Cash, in four (4) equal quarterly installments, with interest at the applicable legal rate, with the first payment being due sixty (60) days after the Effective Date.

Provided further, that the Debtor shall be authorized to pay any Claims of any Claimants in this Class in full in order to preserve and protect its rights and interests in such property and in order to redeem, repurchase or reclaim such property in accordance with applicable law prior to the expiration date of any such redemption, reclamation or repurchase period.

Notwithstanding the foregoing, nothing in this Plan or the treatment provided in this section is intended to discharge or alter the validity, priority, and enforceability of any Liens or security interests afforded to or permitted for Allowed Property Tax Claims under applicable law.

#### 3.2.3 *Impairment and Voting*

16

Class 2 is Impaired by the Plan. The holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

### 3.3   *Class 3 Secured Claim of CIT*

3.3.1   *Classification*.

Class 3 consists of the Secured Claim of CIT.

3.3.2   *Treatment*.

Each holder of a Class 3 Claim shall be treated in accordance with Section 4.1 of this Plan.

3.3.3   *Impairment and Voting*.

Class 3 is Impaired by the Plan. The holders of Class 3 Claims are entitled to vote to accept or reject the Plan. To the extent the claim of the Class 3 creditor is under-secured, the Class 3 creditors shall be treated as a Class 11 creditor.

### 3.4   *Class 4 the Secured Claims of the Empire Lien Claimants*

3.4.1   *Classification*.

Class 4 consists of any Secured Claim of the Empire Lien Claimants.

3.4.2   *Treatment*.

Each holder of a Class 4 Claim shall be treated in accordance with Section 4.4.1 of this Plan.

3.4.3   *Impairment and Voting*.

Class 4 is Impaired by the Plan. The holders of Class 4 Claims are entitled to vote to accept or reject the Plan. The Claims of the Class 4 creditors to the extent they are under-secured shall be treated as Class 10 creditors.

### 3.5   *Class 5 Claim of Virgin Offshore USA, Inc.*

3.5.1   *Classification.*

Class 5 consists of the Claim of VOS arising out of the Empire Operating

Agreement and the Ship Shoal Operating Agreement.

3.5.2   *Treatment.*

Each holder of a Class 5 Claim shall be treated in accordance with Section

4.2 of this Plan.

3.5.3   *Impairment and Voting.*

Class 5 is Impaired by the Plan.  The holders of Class 5 Claim are entitled

to vote to accept or reject the Plan.

**3.6   *Class 6   Claim of Century Exploration Company***

3.6.1   *Classification.*

Class 6 consists of the Claim of Century arising out of the Ship Shoal

Operating Agreement.

3.6.2   *Treatment.*

Each holder of a Class 6 Claim shall be treated in accordance with Section

4.3 of this Plan.

3.6.3   *Impairment and Voting.*

Class 6 is Impaired by the Plan.  The holders of Class 6 Claim are entitled

to vote to accept or reject the Plan.

**3.7      Class 7 RLI Insurance Company**

3.7.1   *Classification.*

Class 7 consists of the Claim of RLI Insurance Company.

3.6.2   *Treatment.*

18

Each holder of a Class 7 Claim shall be treated in accordance with Section 4.5 of this Plan.

### 3.7.3    *Impairment and Voting.*

Class 7 is Impaired by the Plan.  The holders of Class 6 Claim are entitled to vote to accept or reject the Plan.

## 3.8    *Class 8 General Unsecured Claims.*

### 3.8.1    *Classification*

Class 7 consists of all Allowed Unsecured Claims.

### 3.8.2    *Treatment*

Each holder of an Allowed Class 8 Unsecured Claim will receive its pro-rata share of the sum of the New Value Contribution and the proceeds of the D&O Claim less any amounts paid to the holders of Allowed Administrative Claims and the Class 8 creditors. To the extent an entity elects to purchase the Equity Interests of the Debtor for an amount in excess of the New Value Contribution the amount paid to the Class 8 creditors shall be increased.

### 3.8.3    *Impairment and Voting*

Class 8 is Impaired by the Plan. The holders of Class 8 Claims are entitled to vote to accept or reject the Plan.

## 3.9    *Class 9  Convenience  Claims.*

### 3.9.1    *Classification*

Class 8 consists of the holders of Convenience Claims.

### 3.9.2    *Treatment*

Each holder of an Allowed Convenience Claim will be paid Cash equal to one hundred (100%) of the Allowed Amount of such holder's Convenience Claim on the later of: (a) the Effective Date, or (b) the date such Convenience Claim becomes an Allowed Claim.   Provided that all Creditors shall have the option to notify the Debtor of its election to reduce its claim to $1,000.00 and be treated as holder of an Allowed Convenience Claim, within forty five (45) days of the Effective Date.

### 3.9.3   *Impairment and Voting*

Class 9 is impaired by the Plan. The holders of Class 9 Claims are entitled to vote to accept or reject the Plan.

### **3.10**   ***Class 10 Equity Interests***

#### 3.10.1  *Classification.*

Class 10 consists of the Interests in the Debtor.

#### 3.10.2  *Treatment.*

The holder of the Interests in the Debtor shall retain such Interests in the Debtor in exchange for the payment of the New Value Contribution.   The holder of Equity Interests shall not receive any dividends, loans or other distributions other than tax distributions based upon the ownership of Equity Interest in the Debtor until all Allowed Claims have been satisfied in full.   Provided further that if there are any adverse tax consequences resulting from the "pass through" tax attributes of Debtor under federal tax laws, then the Debtor shall reimburse the Equity Interest holders to the extent of any such tax liability resulting from the Equity Interest upon the filing of a tax return.

#### 3.10.3 *Impairment and Voting*

Class 10 is impaired by the Plan.  The Holders of Class 10 Equity Interests are entitled to vote on the Plan.

**3.11**    ***Class 11 Empire Lien  Claimants Deficiency Claims.***

3.11.1   *Classification*

Class 11 consists of Empire Lien  Claimants Deficiency Claims.

3.11.2   *Treatment*

Each holder of an Allowed Class 11 Unsecured Claim shall share pro rata with the Class 8 creditors.

3.11.3  *Impairment and Voting*

Class 11 is impaired by the Plan. The holders of Class 11 Claims are entitled to vote to accept or reject the Plan.

**3.12**    ***Class 12 CIT Deficiency Claims***.

3.12.1   *Classification*

Class 11 consists of CIT Deficiency Claims.

3.12.2   *Treatment*

Each holder of an Allowed Class 12 Unsecured Claim shall share pro rata with the Class 8 creditors.

3.12.3  *Impairment and Voting*

Class 12 is impaired by the Plan. The holders of Class 12 Claims are entitled to vote to accept or reject the Plan.

# ARTICLE 4

## TREATMENT OF SECURED CLAIMS

**4.1**    ***Treatment of CIT***

4.1.1   *General Terms*

The Class 3 claim of CIT shall receive on the Effective Date the sum of $10,000,000.00 in full satisfaction of any security interests CIT possesses in any assets of the Debtor or, to the extent that CIT makes an 1111(b) election, CIT shall receive quarterly payments such that the value of such payments has a present value of $10,000,000 and the sum of the payments equal the face amount of the CIT Claim on the date the Debtor filed for relief under Chapter 11 reduced by any payments received by the CIT during the case. In the event CIT makes an 1111(b) election, then CIT shall be allowed to retain its security interests unless such interests are subordinated to the claims of VOS.

**4.2    *Treatment of Claim of VOS* .**

4.2.1.  *General Terms*

VOS in settlement of the default by the Debtor under the Empire Operating Agreement and the Ship Shoal Operating Agreement shall receive the following:

Empire Operating Agreement:

a)   A net revenue interest in the Empire Lease of 35.109%

b)   All amounts held in escrow by the Court representing the proceeds of production from the Empire Lease;

c)   To the extent that CIT does not make an 1111(b) election, an ownership interest in the Empire Lease such that the ownership of VOS in the Empire Lease after the transfer equals 46.812%;

d)   VOS agrees to loan the Reorganized Debtor funds for purposes of paying: i) Allowed Administrative Expenses under the Plan to the

22

extent New Value Contribution proves insufficient to pay Allowed Administrative Expenses and ii) $650,000 to the Debtor for purposes of obligations to plug and abandon wells on expired leases.

VOS, in settlement of its claim against the Debtor arising out of the Ship Shoal Operating Agreement, shall receive monthly payments from the Debtor out of the proceeds of production from the Ship Shoal Lease such that amount necessary to cure and compensate VOS for the default under the Ship Shoal Operating Agreement shall be paid in 12 monthly payments the first commencing after the payment in full of the Class 4 Claims

### 4.3    *Claim of Century Exploration Company*

4.3.1    *General Terms* – Century shall receive monthly payments from the Debtor out of the proceeds of production from the Ship Shoal lease such that the amount of the Century claim is paid within 12 months from the Effective Date.

### 4.4    *Additional Provisions*

4.4.1    *Payments by VOS under Master Service Agreements*

VOS, to satisfy its liability to entities who either billed VOS or the Debtor under Master Service Agreements with VOS as agent for the Debtor, shall give to such creditors their pro-rata share of a ten (10%) percent production payment in the Empire Lease in perpetuity in settlement of such claims and the lien of such entities on the Empire Lease plus such entities pro-rata share of 1,000,000.00 ("Cash Amount").  To the extent an entity does not participate in the settlement, the production payment and the Cash Amount shall be reduced by that entity's pro rata interest.

In addition, the creditors accepting the settlement shall receive their pro rata share of $1,000,000.00 reduced by the amounts that would have been paid to the non-settling creditors.

### 4.5       Treatment of RLI and P&A Obligations

The Debtor believes that certain oil and gas wells in which it holds or held an interest should be decommissioned or plugged and abandoned in accordance with State and Federal Law.  The Reorganized Debtor will assume all obligations of the Debtor to decommission or plug and abandon oil and gas wells in which the Debtor holds or held an interest as of the Petition Date.  Attached as Exhibit 8 is an estimate of potential plug and abandonment obligations of the Debtor.

Joint owners of the wells listed on Exhibit 8 will remain responsible for their proportionate share of the plug and abandonment costs.

RLI Insurance Company has issued bonds securing certain plug and abandonment obligations of the Debtor and VOS to the Minerals Management Service or its successor in interest.  The Bonds ensure compliance with regulations governing the plug and abandonment of wells.  In return for the bonds, the Debtor assigned its interest in the following accounts held at Whitney National Bank, Restricted P&A Accounts xxxx5519, xxxx5535, xxxx5500, xxxx7767, xxxx5913, xxxx5489, xxxx5497, xxxx5527.

The Debtor's obligations to indemnify RLI in connection with the bonds will be assumed pursuant to Article 6 of this Plan and the P&A Accounts transferred to the Reorganized Debtor, subject to the liens and encumbrances of RLI which liens shall have the same priority as the priority of the liens in favor of RLI against the P&A Accounts as existed as of the Petition Date.

24

# ARTICLE 5

## ACCEPTANCE OR REJECTION OF THE PLAN

**5.1** *Impaired Classes Vote.* Each holder of a Claim or Interest in an impaired Class receiving or retaining anything under this Plan is entitled to vote to accept or reject this Plan to the extent and in the manner provided in the Plan, the Bankruptcy Code and the Bankruptcy Rules, or in any voting procedures order.

**5.2** *Acceptance by Impaired Classes of Claims.* Acceptance of this Plan by any Impaired Class entitled to vote shall be determined in accordance with the Bankruptcy Code, the Bankruptcy Rules, Local Rules and any voting procedures order entered by the Bankruptcy Court.

**5.3** *Designation of Classes Entitled to Vote.* The holders of Claims in those Classes are entitled to vote on the Plan.

**5.4** *Nonconsensual Confirmation.* With respect to any Impaired Class, including any Class of Claims or Interests created pursuant to amendments or modifications to this Plan, that does not accept the Plan, the Debtor will request that the Bankruptcy Court confirm this Plan by Cramdown with respect to any such non-accepting Class or Classes at the Confirmation Hearing, and the filing of this Plan shall constitute a motion for such relief.

# ARTICLE 6

## CONTRACTS AND UNEXPIRED LEASES

**6.1** *Oil and Gas Leases.* The Debtor contends that its interests in oil and gas leases constitute interests in property under applicable law, not an executory contract or unexpired lease. However, for the avoidance of doubt, except as may be expressly

25

provided herein or in the Plan, this Plan shall not be construed as rejection of any interest of the Debtor in any oil and gas lease, the rights appurtenant to such leases or the production therefrom.  Certain leases are not included on Schedules filed in this case due to, among other things, record title being held in name of a third party, but any such omission should not be construed as a rejection or abandonment of any interest of the Debtor in any oil and gas lease.  The Debtor reserves the right to amend its Schedules.

*6.2*    *Assumption*. Each executory contract or unexpired lease of the Debtor that has not expired by its own terms before the Effective Date or previously been assumed by the Debtor in Possession pursuant to an order of the Bankruptcy Court, shall be assumed by the Debtor as of the Effective Date pursuant to Sections 365 and 1123 of the Bankruptcy Code, except for any executory contract or unexpired lease (i) that is listed on a "Schedule of Executory Contracts and Unexpired Leases to be Rejected" (to be Filed on or before the day that is ten (10) days prior to the Confirmation Hearing), (ii) that has been previously rejected by the Debtor in Possession pursuant to an order of the Bankruptcy Court, (iii) as to which a motion for rejection of such executory contract or unexpired lease is filed prior to the Effective Date, or (iv) added to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" prior to the Effective Date. Nothing in the Plan, any Exhibit to the Plan, or any document executed or delivered in connection with the Plan or any such Exhibit creates any obligation or liability on the part of the Debtor, the Reorganized Debtor, or any other person or entity that is not currently liable for such obligation, with respect to any executory contract or unexpired lease except as may otherwise be provided in the Plan.

Any executory contract or unexpired lease assumed pursuant to the Plan shall be and hereby is assumed by the Debtor as of the Effective Date and shall be fully enforceable by the Debtor in accordance with its terms thereof, and shall include all written modifications, amendments, supplements of said executory contract or unexpired lease and, as with respect to executory contracts or unexpired leases that relate to real property, shall include all written agreements and leases appurtenant to the premises, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easements, and any other interests in real property or rights *in rem* related to such premises.  Listing a contract or lease on the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" is not deemed an admission by the Debtor or Reorganized Debtor that such contract is an executory contract or unexpired lease or that the Debtor or Reorganized Debtor has any liability thereunder.

The Debtor reserves the right at any time before the Effective Date to amend the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to: (a) delete any executory contract or unexpired lease listed on the "Schedule of Executory Contracts and Unexpired Leases to be Rejected", thus providing for its assumption under the Plan, or (b) add any executory contract or unexpired lease to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected", thus providing for its rejection under the Plan.  The Debtor shall provide notice of any such amendment of the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to the party to the affected executory contract and unexpired lease.

The terms of the acceptance of the Empire Operating Agreement and the Ship Shoal Operating Agreement are set forth in Article 4 of this Plan.

The terms of acceptance of the indemnity obligations of the Debtor to RLI are set forth in Article 4 of the Plan.

**6.3    *Cure Payments, Compensation for Pecuniary Loss, and Adequate Assurance*.**   All payments, including any and all cure payments, adequate assurance or compensation for actual pecuniary loss, that are required to be paid or provided by Section 365(b)(1)(A)-(C) of the Bankruptcy Code (collectively, all cure payments, and any and all provisions for adequate assurance and/or compensation for actual pecuniary loss due or required to be paid under Section 365(b)(1)(A)-(C) of the Bankruptcy Code, the  "Cure Payments") for any executory contract or unexpired lease that is being assumed under the Plan, unless disputed by the Debtor, shall be made in accordance with the Plan or the schedule of cure payments that will be filed on or before the hearing on the Disclosure Statement that accompanies this Plan. **Any non-Debtor party to any executory contract or unexpired lease to be assumed under the Plan that objects to assumption of the executory contract or unexpired lease or believes that a Cure Payment or additional cure payment is due in connection with such assumption must file a written objection to the assumption of such executory contract or unexpired lease in a separate pleading ten (10) days prior to the Confirmation Hearing as an objection to the Plan or the Contract and state in the written objection the grounds for such objection and specifically set forth the amount of any request for a Cure Payment within 10 days after the hearing on the Debtor's Disclosure Statement.**   Unless the non-debtor party to any executory contract or unexpired lease to be assumed files and serves on the Debtor and its counsel an objection to assumption of such executory contract or unexpired lease for any reason, or asserting

28

that a Cure Payment or additional Cure Payment is required or owed in connection with such assumption, by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan, then the executory contracts and unexpired leases shall be assumed, and any default then existing in the executory contract and/or unexpired lease shall be deemed cured as of the Effective Date, and there shall be no other cure obligation or Cure Payment due or owed by anyone, including the Debtor and the Reorganized Debtor, in connection with such assumption of the executory contract or unexpired lease. Any Claims for Cure Payments not Filed as part of a written objection to the proposed assumption within such time period will be forever barred from assertion against the Debtor, its Estate, the Debtor, and its Assets, and the holders of any such Claims are barred from recovering any distributions under the Plan on account thereof. In the event of an objection to the assumption of executory contracts or unexpired leases regarding the amount of any Cure Payment, or the ability of the applicable Reorganized Debtor to provide adequate assurance of future performance or any other matter pertaining to assumption, (a) the Bankruptcy Court will hear and determine such dispute at the Confirmation Hearing, and, (b) in the discretion of the Debtor, the Debtor (i) may assume such disputed executory contract or unexpired lease by curing any default or providing adequate assurance in the manner determined by the Bankruptcy Court, or (ii) the Debtor may reject such executory contract or unexpired lease as of the Effective Date. The Reorganized Debtor shall make any Cure Payment  on the later of the Effective Date and the date such Cure Payment is due pursuant to a Final Order or this Plan, provided however that the applicable Reorganized Debtor shall have five (5) Business Days after any order determining the amount of a disputed Cure Payment becomes a Final Order in

29

which to amend the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to provide for the rejection of such executory contract or unexpired lease and, in such an event, such executory contract or unexpired lease shall be deemed rejected as of the Effective Date.

**6.4     *Effect of Confirmation Order on Executory Contracts and Unexpired Leases*.** Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of such assumptions pursuant to Section 365(a) and 1123(b)(2) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtor, its estate, and all parties in interest. In addition, the Confirmation Order shall constitute a finding of fact and conclusion of law that (i) there are no defaults of the Debtor, no Cure Payments or additional Cure Payments owing (including that there is no compensation due for any actual pecuniary loss), (ii) there is adequate assurance of future performance with respect to each such assumed executory contract or unexpired lease, (iii) such assumption is in the best interest of the Debtor and its estate, (iv) upon the Effective Date, the assumed executory contracts or unexpired leases constitute legal, valid, binding and enforceable contracts in accordance with the terms thereof, and (v) the counter party to each assumed executory contract or unexpired lease is required to and ordered to perform under and honor the terms of the assumed executory contract or unexpired lease. All executory contracts and unexpired leases assumed under the Plan or during this Chapter 11 Case constitute valid contracts and leases, as applicable, enforceable by the Debtor against the non-Debtor counterparties regardless of any cross-default or change of control provisions

in any contracts or leases assumed or rejected under the Plan or during the Chapter 11 Case.

Subject to the occurrence of the Effective Date, the Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection as of the Effective Date of all executory contracts and unexpired leases which are not assumed under this Plan, with the rejection effective as of the day before the Petition Date, as being burdensome and not in the best interest of the estate.

**6.5** **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan**. Any Claims for damages arising from the rejection of an executory contract or unexpired lease under this Plan must be Filed within thirty (30) days after the Effective Date or, with respect to any executory contracts or unexpired leases which are rejected after the Effective Date by amendment to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected," no later than thirty (30) days after the date of such amendment to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected," or such Claims will be forever barred and unenforceable against the Debtor, Reorganized Debtor, and its Assets and the holders of any such Claims are barred from receiving any distributions under the Plan.

# ARTICLE 7

# DISTRIBUTIONS UNDER THE PLAN

**7.1** **Distributions under the Plan**. The Reorganized Debtor or, at the option of the Reorganized Debtor, any distribution agent of the Reorganized Debtor shall make all distributions to the holders of Allowed Claims and Allowed Interests that are required under this Plan. Each distribution shall be made on a Distribution Date. Distributions to

be made on the Distribution Date shall be deemed actually made on the Distribution Date

if made either (a) on the Distribution Date or (b) as soon as practicable thereafter.  If any

litigation now pending is resolved by Final Order or settlement, and the Debtor is ordered

to pay any sums to the successful litigant, then such party shall become a creditor, and

shall share in distributions to the appropriate Class.  Whenever any distribution to be

made under this Plan shall be due on a day other than a Business Day, such distribution

shall instead be made, without the accrual of any interest, on the immediately succeeding

Business Day, but shall be deemed to have been made on the date due.

     **7.2**    ***Record Date for Voting on Plan***.  The transfer registers for each of the

Classes of Claims and Interests as maintained by the Debtor or any third party, including

the voting agent, shall be deemed closed on the date of entry of an order of the

Bankruptcy Court approving the Disclosure Statement (or, with respect to any Class, any

later date to which the Debtor agree) for purposes of voting on the Plan, and there shall

be no further changes to reflect any new record holders of any Claims or Interests for

purposes of voting on the Plan.

     **7.3**    ***Delivery of Distributions***.  Except as otherwise provided in this Plan,

distributions to a holder of an Allowed Claim or Allowed Interest shall be made at the

address of such holder as indicated on the Debtor's records.  In the event that any such

distribution is returned as undeliverable, the Reorganized Debtor shall use reasonable

efforts to determine the current address of the applicable holder, and no distribution to

such holder shall be made unless and until the Reorganized Debtor has determined such

then current address, *provided, however*, that if any distribution remains unclaimed after

the first anniversary after distribution, such distribution shall be deemed unclaimed

property pursuant to Section 347(b) of the Bankruptcy Code and shall become vested in the Reorganized Debtor. In such event, the Claim of the holder for such distribution shall no longer be deemed to be Allowed, and such holder shall be deemed to have waived its rights to such distribution under this Plan pursuant to Section 1143 of the Bankruptcy Code, shall have no further claim or right thereto, and shall not participate in any further distributions under this Plan with respect to such Claim. Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof.

7.4    *Third Party Agreements*. The distributions to the various Classes of Claims or Interests hereunder will not affect the right of any Entity to levy, garnish, attach, or employ any other legal process with respect to such distributions by reason of any claimed subordination or lien priority rights or otherwise. All subordination agreements entered into by any parties in interest shall be enforceable to the extent permitted by applicable law, and all distributions and payments made pursuant to the Plan shall be subject to applicable law.

7.5    *Manner of Payment Under the Plan*. At the option of the Reorganized Debtor, any payment in Cash to be made under the Plan may be made by check or wire transfer from a domestic bank or as otherwise required by applicable agreement.

7.6    *No Fractional Distributions*. No fractional dollars shall be distributed under the Plan. For purposes of distributions, Cash distributions shall be rounded up or down, as applicable, to the nearest whole dollar.

7.7    *Withholding and Reporting*. The Reorganized Debtor shall comply with all applicable withholding and reporting requirements imposed by federal, state, and local

33

taxing authorities, and all distributions shall be subject to such withholding and reporting requirements.

**7.8** *Disputed Claims Reserve.* On the Effective Date, the Reorganized Debtor shall establish a Disputed Claims Reserve account to pay any Disputed Claims in the event such Claims become Allowed or a portion of such Claims become Allowed, after a Final Order. The Debtor shall deposit into this account an amount equal to the disbursement that such Claimant would be entitled to or would receive if its Claim were Allowed in full. If such Claimant's Disputed Claim is disallowed in its entirety, then all funds maintained in the Disputed Claims Reserve on account of such Disputed Claim shall immediately be transferred to the account of the Debtor and the Debtor shall cease making any further distributions to the Disputed Claims Reserve on account of the Disputed Claim. If such Claimant's Disputed Claim is allowed in its entirety, then all funds maintained in the Disputed Claims Reserve for the benefit of this Disputed Claim shall immediately be turned over to the Claimant. If a Disputed Claim is only partially Allowed, then the Claimant shall receive immediate disbursement equal to the amount that this Claimant would have received based upon the portion of the Claim that was Allowed. The Debtor shall then commence making direct payments to the Claimant in such amount equal to the amount that the Claimant is entitled to pursuant to the confirmed Plan.

# ARTICLE 8

# MEANS FOR EXECUTION AND
# IMPLEMENTATION OF THE PLAN

**8.1** *Generally*.    Upon confirmation of this Plan, the Debtor shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the

34

terms and conditions of this Plan including, without limitation, the execution and filing of all documents required or contemplated by this Plan. In connection with the occurrence of the Effective Date, the Reorganized Debtor is authorized to execute, deliver, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**8.2** *Entity Action.* The Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate, for and on behalf of the Debtor and Reorganized Debtor, to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan, or to transfer, sell or assign any rights, property or assets of the Debtor.

**8.4** *Plan Documents.* The Plan and all documents to implement this Plan and the transactions contemplated herein shall be in form and substance satisfactory to the Reorganized Debtor.

**8.5** *Effectuating Documents and Further Transactions.* The Debtor and the Reorganized Debtor shall be authorized on behalf of the Debtor and the Reorganized Debtor to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate, for and on behalf of the Debtor and the Reorganized Debtor, to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

35

**8.6** *No Dividends, Loans or Other Disbursements to Interests.* There shall be no dividends, loans or other disbursements, other then the compensation and benefits approved by the Court, with respect to the equity or membership interests of the Debtor or Reorganized Debtor until all Allowed Claims under this Plan have been paid in full. However, in the event there are any adverse tax consequences toward the member(s) resulting in any tax liabilities owed by such member(s), then the Debtor shall be responsible for the satisfaction of such tax liabilities.

**8.7** *Management of the Reorganized Debtor.* The current management of the Debtor shall become the management of the Reorganized Debtor for the compensation set forth in the Debtor's Disclosure Statement.

# ARTICLE 9

## RESOLUTION OF DISPUTED CLAIMS AND INTERESTS

**9.1** *Objections to Claims and Interests; Prosecution of Disputed Claims and Interests.* The Debtor and, after the Effective Date, the Reorganized Debtor, shall have the exclusive right to object to the allowance, amount or classification of Claims and Interests asserted in the Chapter 11 Case, and such objections may be litigated to Final Order by the Debtor or Reorganized Debtor, as applicable, or compromised and settled in accordance with the business judgment of the Debtor or Reorganized Debtor, as applicable, without further order of the Bankruptcy Court. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims and Interests shall be Filed no later than one hundred and twenty (120) days after the Effective Date, subject to any extensions granted pursuant to further order of the Bankruptcy Court, which

36

extensions may be obtained by the Reorganized Debtor without notice upon *ex parte* motion.

**9.2** ***Estimation of Disputed Claims and Interests***.  The Debtor and, after the Effective Date, the Reorganized Debtor may at any time request that the Bankruptcy Court estimate for all purposes, including distribution under this Plan and including payments to the Disputed Claims Reserve account, any Disputed, contingent or unliquidated Claim or Interest pursuant to Section 502(c) of the Bankruptcy Code whether or not the Debtor or the Reorganized Debtor has previously objected to such Claim or Interest.  The Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest at any time, including, without limitation, during the pendency of an appeal relating to such objection.

**9.3** ***No Distribution on Account of Disputed Claims and Interests.*** Notwithstanding anything else contained in this Plan, except with respect to any undisputed, non-contingent and liquidated portion of General Unsecured Claims, no distribution shall be due or made with respect to all or any portion of any Disputed, contingent, or unliquidated Claim until the Claim becomes an Allowed Claim by Final Order.  The Reorganized Debtor shall set aside or reserve a portion of the consideration payable to the holders of Allowed Claims and Allowed Interests in a particular Class to be held in the Disputed Claims Reserve for such Class in an amount sufficient to pay to the holders of all Disputed Claims in such Class the full distributions they may be entitled to if its respective Claims and Interests were ultimately to be allowed in full by Final Order.

## ARTICLE 10

# EFFECT OF CONFIRMATION OF PLAN

**10.1**    ***Vesting of Assets and Retained Causes of Action.***   Except as otherwise provided herein, on the Effective Date, pursuant to Section 1141(b) of the Bankruptcy Code, all Assets of the Debtor in Possession and its respective Estate shall vest in the Reorganized Debtor free and clear of any and all Claims, Liens, Interests, and other interests, charges and encumbrances, except as otherwise expressly provided in this Plan or in the Confirmation Order. From and after the Effective Date, the Reorganized Debtor may operate its business and may own, use, acquire and dispose of Assets free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if the Chapter 11 Case had never been filed.  The Debtor will not pursue any Avoidance Claims for affirmative recoveries or assert Avoidance Claims against the holders of General Unsecured Claims with respect to such General Unsecured Claims, but reserve all such Avoidance Claims for defensive purposes and may assert Avoidance Claims as defenses against other Claims filed against the Debtor.

Except as otherwise specifically provided in this Plan, the Reorganized Debtor shall retain all rights and are authorized to commence and pursue, as the Reorganized Debtor deem appropriate, any and all claims and Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Case, and including, but not limited to, the claims and Causes of Action specified in the Plan.  Due to the size and scope of the Debtor's business operations and the multitude of business transactions therein, there may be other claims and Causes of Action that currently exist or may subsequently arise, all of which other claims and Causes of Action shall revest in the

38

Reorganized Debtor.  The Reorganized Debtor does not intend, and it should not be assumed that because any existing or potential claims or Causes of Action have not yet been pursued by the Debtor, that any such claims or Causes or Action have been waived or will not be pursued.  Under this Plan, the Reorganized Debtor retains all rights to pursue any and all claims and Causes of Action to the extent the Reorganized Debtor deem appropriate (under any theory of law or equity, including, without limitation, the Bankruptcy Code and any applicable local, state, or federal law, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Case) except as otherwise specifically provided in this Plan.

**10.2**   *Binding Effect***.**   Subject to the occurrence of the Effective Date on or before the deadline set forth in Section 11.1 of the Plan, on and after the occurrence of the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against or an Interest in the Debtor and such holder's successors and assigns, whether or not such holder's Claim or Interest is Impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

**10.3**   *Discharge of the Debtor***.**   Except as otherwise specifically provided in this Plan or in the Confirmation Order, the rights afforded in this Plan and the treatment of the Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims against and Interests in the Debtor, the Debtor in Possession, the Reorganized Debtor or the Assets, properties, or property of the Debtor, the Debtor in Possession or the Reorganized Debtor of any nature whatsoever, including any interest accrued on any Claim from and after the Petition Date. Except as expressly

39

otherwise provided herein or in the Confirmation Order, on the Effective Date, all Claims arising before the Effective Date (including those arising under Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code) against the Debtor and the Debtor in Possession (including any based on acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of the Debtor, or any conduct for which the Debtor may be deemed to have strict liability under any applicable law), and all Interests shall be irrevocably satisfied, discharged, cancelled and released in full.

For the avoidance of doubt, the Reorganized Debtor shall be responsible only for (a) those payments and Distributions expressly provided for or due under this Plan and (b) Claims and Interests that are not canceled and discharged pursuant to specific and express provisions of this Plan, and then only to the extent and in the manner specifically and expressly provided in this Plan.  All Entities are precluded and forever barred from asserting against the Debtor, the Debtor in Possession or the Reorganized Debtor, or the Assets, properties, or property of the Debtor, the Debtor in Possession or the Reorganized Debtor of any nature whatsoever any Claims or Interests based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date, except for (a) those payments and distributions expressly due under this Plan and (b) Claims and Interests, if any, that are not canceled and discharged under the Plan, but instead survive pursuant to specific and express provisions of this Plan, and then only to the extent and in manner specifically and expressly provided in the Plan.

**10.4    *Indemnification Obligations*.**  Subject to the occurrence of the Effective Date on or before the deadline set forth in Section 11.1 of the Plan, the obligations of the Debtor to indemnify, reimburse or limit liability of any person who is serving or has served as one of its directors, officers, employees or agents by reason of such person's prior or current service in such capacity as provided in the applicable articles of organization, operating agreements, partnership agreements, or bylaws, by statutory law or by written agreement, policies or procedures of or with the Debtor, shall be deemed to be and treated as executory contracts that are assumed by the Debtor and assigned to the Reorganized Debtor pursuant to the Plan and section 365 of the Bankruptcy Code and shall not be affected by or discharged by this Plan.  Nothing in the Plan shall be deemed to affect any rights of any director or officer or any other person against any insurer with respect to any directors or officers liability insurance policies.

**10.5    *Term of Certain Injunctions*.**  Unless otherwise provided herein or in the Confirmation Order, all of the injunctions and/or stays provided for in, or in connection with, the Chapter 11 Case, whether pursuant to Section 105, Section 362, or any other provision of the Bankruptcy Code or other applicable law, in existence on the Confirmation Date, shall remain in full force and effect through the Effective Date and thereafter if so provided by this Plan, the Confirmation Order, or by their own terms.  In addition, on and after the Confirmation Date, the Debtor may seek such further orders as it may deem necessary or appropriate to preserve the *status quo* during the time between the Confirmation Date and the Effective Date.

**10.6    *No Successor Liability*.**  Except as otherwise specifically provided in the Plan or the Confirmation Order, neither the Debtor nor the Reorganized Debtor will have

41

any responsibilities, pursuant to the Plan or otherwise, for any liabilities or obligations of the Debtor or the Debtor's past or present subsidiaries relating to or arising out of the operations of or Assets of the Debtor or the Debtor's past or present subsidiaries, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Effective Date.  The Reorganized Debtor shall have no successor or transferee liability of any kind or character, for any Claims; *provided, however*, that the Reorganized Debtor shall have the obligations for the payments specifically and expressly provided, and solely in the manner stated, in the Plan.

### 10.7    Exculpation.

Neither the Debtor, Reorganized Debtor, Official Committee of Unsecured Creditors or any of their respective employees, officers, directors, agents, representatives, professional persons or attorneys shall have or incur any liability to any person and are hereby released from any such liability or any claims or causes of action related thereto for any act taken or omission made in connection with, relating to, or arising out of the: i) the Chapter 11 Case; ii) negotiation, formulation and filing of Plans or other documents relating thereto; iii) formulation, preparation, dissemination or approval of the Disclosure Statement or any financial information or projections included therein or solicitation of votes on or funds for the Plan, iv) confirmation of the Plan and consummation and administration of the Plan and any property to be distributed pursuant to the Plan.

### 10.8    *Preservation of All Causes of Action Not Expressly Settled or Released.*

For the avoidance of doubt, and without limiting or restricting any other provisions of this Plan, including but not limited to Section 10.1 "Vesting of Assets and Retained Causes of Action," unless a claim or Cause of Action against a Creditor or other

42

Entity is expressly and specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, the Reorganized Debtor expressly reserve such claim or Cause of Action for adjudication or pursuit by the Reorganized Debtor after the Effective Date, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation Date or Effective Date of the Plan based on the Disclosure Statement, the Plan, the Confirmation Order or otherwise.  The Reorganized Debtor expressly reserves the right to pursue or adopt any claims (and any defenses) or Causes of Action of the Debtor or the Debtor in Possession, as trustees for or on behalf of the Creditors, not specifically and expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order against any Entity, including, without limitation, the plaintiffs or codefendants in any lawsuits.  The Reorganized Debtor shall be a representative of the Estate appointed for the purposes of pursuing any and all such claims and Causes of Action under 11 U.S.C. § 1123(b)(3)(B).

Any Entity to whom the Debtor has incurred an obligation (whether on account of services, purchase or sale of goods, tort, breach of contract or otherwise), or who has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or leased equipment or property from the Debtor, should assume that such obligation, transfer, or transaction may be reviewed by the Reorganized Debtor subsequent to the Effective Date and may, to the extent not theretofore specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, be the subject of an action or claim or demand after the Effective

Date, whether or not (a) such Entity has filed a proof of claim against the Debtor in the Chapter 11 Case, (b) such Entity's proof of claim has been objected to, (c) such Entity's Claim was included in the Debtor's Schedules, or (d) such Entity's scheduled Claim has been objected to by the Debtor or has been identified by the Debtor as disputed, contingent, or unliquidated.

# ARTICLE 11

## THE EFFECTIVE DATE OF THE PLAN

**11.1** *Conditions to Occurrence of Effective Date of Plan.* The "Effective Date of the plan," as used in Section 1129 of the Bankruptcy Code, shall not occur until the following conditions shall have been satisfied (or shall be satisfied contemporaneously with or immediately upon the occurrence of the Effective Date) or waived by the Debtor:

11.1.1 The Confirmation Order shall have become a Final Order; *provided, however,* that the Effective Date may occur at a point in time when the Confirmation Order is not a Final Order at the option of the Debtor, unless the effectiveness of the Confirmation Order has been stayed or vacated.

11.1.2  The Confirmation Order shall have been entered.

11.1.3  The Confirmation Order shall be unstayed and shall have become a Final Order.

11.1.4 The Plan and all documents to implement this Plan and the transactions contemplated herein shall be in form and substance satisfactory to the Proponents.

11.1.5 All Professional charges due to or incurred by Professionals through the Effective Date not previously paid pursuant to interim and final orders shall

have been paid into and shall be held in escrow, free and clear of liens, claims and encumbrances of Claimants and holders of Interests (other than the rights of Professionals), until due and payable in accordance with applicable Bankruptcy Court order.

11.1.6 All payments of Cash due under the Plan on the Effective Date shall have been made.

**11.2** *Filing of Notice of Effective Date***.** Within two (2) Business Days of the occurrence of the Effective Date, the Reorganized Debtor shall file a notice of occurrence of the Effective Date signed by the counsel for the Debtor in Possession and, if different, counsel to the Reorganized Debtor in the record of the Bankruptcy Court reflecting (a) that the foregoing conditions to the occurrence of the Effective Date have been satisfied or waived by the Debtor and any other person whose consent or waiver is required, (b) the date of the Effective Date, and (c) acknowledging that the Effective Date has occurred on and as of such date.

**11.3** *Revocation of Confirmation Order or Withdrawal of Plan***.** The Debtor may revoke or withdraw the Plan subsequent to the Confirmation Date by filing a Notice of Withdrawal of Plan in the record of the Chapter 11 Case prior to the Effective Date, in which case the Plan shall be deemed withdrawn and the Confirmation Order (if any has been entered) shall be automatically revoked without the need for any action by any party in interest or the Bankruptcy Court.  In such event, the Plan or Modified Plan and the Confirmation Order shall be of no further force or effect and, the Debtor and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the filing of the Plan, and all the Debtor's respective obligations with respect to

the Claims and Interests shall remain unchanged, all of the Debtor's rights and claims against all Entities shall be fully preserved and nothing contained herein or in the Disclosure Statement shall be deemed to constitute an admission or statement against interest or to constitute a waiver or release of any claims by or against the Debtor or any other persons or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor or any other persons.

# ARTICLE 12

## MISCELLANEOUS PROVISIONS

**12.1** *Payment of Statutory Fees.* All fees payable pursuant to Section 1930 of title 28 of the United States Code shall be paid after the Effective Date by the Reorganized Debtor, as, when and in the amount as required by applicable law.

**12.2** *Dissolution of the Unsecured Creditors Committee*. On the Effective Date, the Unsecured Creditors Committee, if one has been appointed, and its Professionals shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to or arising from or in connection with the Chapter 11 Case, and the Unsecured Creditors Committee shall be deemed dissolved.

**12.3** *Pension Plans.* For avoidance of doubt, on and after the Effective Date, pursuant to Section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtor shall continue to pay all retiree benefits of the Debtor (within meaning of Section 1114 of the Bankruptcy Code), if any, at the level established in accordance with Section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, for the duration of the period for which such Debtor had obligated themselves to provide such benefits.

**12.4    *Notice.*** Any notices, requests, and demands required or permitted to be provided under this Plan, in order to be effective, must be in writing (including by electronic mail or facsimile transmission), and unless otherwise expressly provided herein, shall be deemed to have been duly given or made (a) if personally delivered or if delivered by electronic mail or courier service, when actually received by the Entity to whom such notice is sent, or (b) if deposited with the United States Postal Service (whether actually received or not), at the close of business on the third Business Day following the day when placed in the mail, postage prepaid, certified or registered with return receipt requested, addressed to the appropriate Entity or Entities, at the address of such Entity or Entities set forth below (or at such other address as such Entity may designate by written notice to all other Entities listed below in accordance with this Section:

| If to the Debtor or Reorganized Debtor: | |
|---|---|
| Law Office of Emile L. Turner, Jr., LLC<br>424 Gravier Street<br>New Orleans, LA 70130<br>Email: eltjr01@bellsouth.net<br>Emile L. Turner, Jr.<br>Attn: Leo Congeni, Esq.<br>Email: leocongeni@bellsouth.net | |

**12.5    *Headings*.** The headings used in this Plan are inserted for convenience only and do not in any manner affect the construction of the provisions of this Plan.

**12.6    *Governing Law*.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Louisiana, without giving effect to any conflicts of law principles thereof that would

result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.

**12.7**   *Additional Documents*.   The Debtor has the authority to take any and all actions and execute (and perform) any agreements and documents as the Debtor deems necessary or appropriate in its reasonable discretion to effectuate and further evidence the terms and conditions of this Plan.

**12.8**   *Compliance with Tax Requirements*.   In connection with this Plan, the Debtor and the Reorganized Debtor will comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

**12.9**   *Exemption from Transfer Taxes*.   Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any securities under this Plan, the making or delivery of any mortgage, deed of trust, other security interest, or other instrument of transfer under, in furtherance of, or in connection with this Plan, shall be exempt from all taxes as provided in such Section 1146(a) of the Bankruptcy Code.

**12.10**   *Further Authorizations*.   The Debtor, and after the Effective Date, the Reorganized Debtor, may seek such orders, judgments, injunctions, and rulings they deem necessary or useful to carry out the intention and purpose of, and to give full effect to, the provisions of this Plan.

**12.11**   *Successors and Assigns.*   The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit

48

of, any heir, executor, administrator, personal representative, successor or assign of such Entity.

**12.12** ***Modification and Amendment of the Plan.*** Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3019, this Plan may be amended or modified by the Debtor, and, after the Effective Date, by the Reorganized Debtor.

**12.13** ***Right of Debtor to Prepay Installments.*** Notwithstanding any other provision contained herein, the Debtor shall have the right to prepay any installment due under this Plan to any Creditor or taxing authority without any penalties or adverse effects.

# ARTICLE 13

# RETENTION OF JURISDICTION

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have jurisdiction to the fullest extent provided by applicable law over any matter arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case or this Plan, including, without limitation, the following:

**13.1** ***Executory Contracts and Unexpired Leases.*** To hear and determine any and all motions or applications (i) for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, (ii) to review and determine all Cure Payments under any such assumed executory contract or unexpired lease, and (iii) to review and determine any Claims resulting from the rejection of any executory contract or unexpired lease.

**13.2    *Causes of Action.***   To determine any and all Causes of Action, including all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Reorganized Debtor after the Effective Date.

**13.3    *Disputed Claims, Contingent Claims and Unliquidated Claims Allowance/Disallowance.***   To hear and determine any objections to the allowance of Claims or Interests (other than Claims that are Allowed pursuant to the Plan), including but not limited to any objections to the classification of any Claim, and to allow or disallow any contingent Claim, Disputed Claim, unliquidated Claim, contingent Interest, disputed Interest in whole or in part, and to determine any and all disputes among Creditors and holders of Interests with respect to their Claims and Interests.

**13.4    *Enforcement/Modification of Plan.***

13.4.1 To hear and determine any requests to modify this Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order.

13.4.2 To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan documents or their interpretation, implementation, enforcement, or consummation.

13.4.3 To hear and determine such other matters that may be set forth in the Plan and the Confirmation Order or that relate to any transaction required or contemplated by the Plan.

13.4.4  To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of the Plan, the Confirmation Order, and all orders entered by the Bankruptcy Court in the Chapter 11 Case.

13.4.5  To hear and determine any issue relating to distributions under the Plan.

13.4.6  To enter such orders as are necessary to implement and enforce the injunctions described herein, including orders extending the protections afforded under Section 105 of the Bankruptcy Code.

13.4.7  To issue such orders in aid of execution of this Plan to the fullest extent authorized or contemplated by Section 1142 of the Bankruptcy Code.

**13.5**   ***Compensation of Professionals.***   To hear and determine all applications for allowances of compensation and reimbursement of expenses of Professionals, any other fees and expenses authorized to be paid or reimbursed under this Plan, and to approve the reasonableness of any payments made or to be made as provided in Section 1129(a)(4) of the Bankruptcy Code.

**13.6**   ***Settlements.***   To the extent that Bankruptcy Court approval is required, to consider and act on any compromise and settlement of any Claim against or Cause of Action by the Debtor or the Reorganized Debtor.

**13.7** ***Taxes.***   To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtor or Debtor in Possession may be liable, directly or indirectly, in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code.

**13.8** *506(b) Claims*. To determine the amounts, if any, of the reasonable fees, costs and other charges payable under Section 506(b) of the Bankruptcy Code.

**13.9** *Specific Purposes.*    To hear and determine such other matters as may be provided for in the Confirmation Order or may be appropriate under applicable law.

**13.10**  *Final Decrees.* To enter an order or final decree closing the Chapter 11 Case.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated:  July 30, 2010

**PLAN OF REORGANIZATION FILED BY:**

**VIRGIN OIL COMPANY, INC.**

*/s/ Robert F. Smith*

BY:_____
Robert F. Smith, President

**LAW OFFICE OF EMILE L. TURNER, JR., L.L.C.**

*/s/ Leo D. Congeni*

BY:_____
EMILE L. TURNER, JR. (#12963)
LEO D. CONGENI, *Of Counsel* (#25626)
424 Gravier Street
New Orleans, LA  70130
Phone: 504-586-9120

*Attorneys for Virgin Oil Company, Inc.*